IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DR. DAVID WHEELER, an individual, | ) | |
| NORA KOSZTOLANYI, an individual, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No. 06-214-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MELONIE MONTGOMERY, an | ) | |
| individual, and JOHN ERIC AHLGREN, | ) | |
| dba FENESTRA RESEARCH, an | ) | |
| individual, | ) | |
| | ) | |
| Defendants. | ) | |

Leonard D. DuBoff
Christopher W. Brown
The DuBoff Law Group, LLC
6665 S.W. Hampton Street, Suite 200
Portland, Oregon 97223-8357

    Attorneys for Plaintiffs

Page 1 - OPINION AND ORDER

John Eric Ahlgren
Melonie Montgomery
P. O. Box 371158
Las Vagas, Nevada  89137-1158

    Pro Se Defendants

KING, Judge:

Plaintiffs Dr. David Wheeler and Nora Kosztolanyi allege various claims arising out of a business relationship with defendants Melonie Montgomery and John Eric Ahlgren dba Fenestra Research.

Before the court is plaintiffs' Motion for Summary Judgment (#41). For the following reasons, I grant in part and deny in part the motion.

## BACKGROUND

Plaintiffs previously submitted a motion for summary judgment, which the court denied with leave to renew after explaining that the court would not consider as admissions the *pro se* defendants' responses to plaintiffs' First Request for Admissions simply because defendants provided the responses by e-mail and did not sign them.

The court ordered any renewed motion for summary judgment to be filed by February 20, 2007, and ordered defendants to respond by March 6, 2007. Defendants have not filed a response.

The following facts were offered by plaintiffs and, since defendants have not filed a response, they are deemed admitted for purposes of this summary judgment motion. L.R. 56.1(f).

Wheeler is the developer of an enhanced drinking water product called "M Water" which increases cellular hydration to the body.

Wheeler entered into a series of agreements with Fenestra, LLC, Montgomery, and Fenestra Research. Pursuant to these agreement, Montgomery and Fenestra Research conducted clinical tests of Wheeler's "M Water." Defendants had not previously conducted studies on any water product.

Wheeler paid $53,495.76 to defendants for the clinical studies performed pursuant to these agreements. The $53,495.76 Wheeler paid to Fenestra Research is the full amount that is owed to Fenestra Research or Montgomery for these clinical studies and reports.

Wheeler co-wrote the articles outlining the results of the studies completed by Montgomery and Fenestra, including those parts that were identified as being written by Montgomery.

Wheeler placed these articles on two websites, www.0disease.com and www.infinitywater.us prior to April 28, 2005. No changes have been made to the study reports since placing them on these websites.

Plaintiff Nora Kosztolanyi co-owns www.infinitywater.us with Wheeler.

On April 28, 2005, Montgomery acknowledged in writing that she had reviewed "all the articles and reports provided to David Wheeler and have approved of those already in print or as hard copy or [on] his website" in a letter agreement she signed.

Wheeler sent a letter to Montgomery on October 18, 2005, requesting that Montgomery review the study reports he placed on www.0disease.com and www.infinitywater.us and offer any comments. Wheeler received no reply or objections from Montgomery in response to his October 18, 2005 letter.

In the course of conducting the clinical studies for Wheeler, Montgomery and Fenestra Research were exposed to Wheeler's trade secrets. Montgomery and Fenestra Research agreed to keep all results of the tests performed on the "M Water" product confidential.

On June 27, 2005, Glacia Nova, LLC offered $3,600,000 to purchase the M Water technology from plaintiffs.

Montgomery told Sungwook Joon Choe, the vice-president of Glacia Nova, that plaintiffs did not in fact create the technology behind M Water, and that the M Water technology did not work as Wheeler had suggested because the technology was designed to work with one particular source of water and would not work with Glacia Nova's water source. Montgomery told Choe that she and Fenestra Research created the M Water technology for Wheeler.

Montgomery offered to provide consulting services to create Glacia Nova's own manufacturing protocol that would produce a superior product at a fraction of the cost of what had been offered to plaintiffs. Based on this information, Glacia Nova ended further negotiations with plaintiffs. The information Montgomery told Choe was false.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

Plaintiffs move for summary judgment on their first, third and fifth claims for relief, and seek dismissal of defendants' counterclaims.

I.   First Claim for Relief

In plaintiffs' first claim for relief, plaintiffs seek a declaration that (1) they have not infringed on any copyright owned by Fenestra Research or Montgomery; (2) Wheeler is co-owner of all articles and papers written about the clinical studies for which Fenestra Research or Montgomery have claimed plaintiffs have infringed; and (3) declare that Wheeler owes no additional funds for the clinical studies performed on his products.

With regard to the first two requests, under federal copyright law, "[t]he authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a). Plaintiffs claim that Wheeler co-wrote and paid for each of the clinical study reports at issue in the case and, as a result, he is considered a joint author. Based on this conclusion, the court should declare no copyright infringement and should declare him a co-owner of the copyright.

A "joint work" is defined to be "a work prepared by two or more authors with the intention that their contribution be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. In the absence of a contract, in determining whether the claimant is an "author," courts consider whether the person exercised control over the work, whether there are other "objective manifestations of a shared intent to be coauthors," and whether the "audience appeal of the work turns on both contributions." Aalmuhammed v. Lee, 202 F.3d 1227, 1234 (9th Cir. 2000).

Based on the evidence submitted by plaintiffs, I do not find that Wheeler is a co-owner of a copyright, if any, in the papers written about the clinical studies. Plaintiffs have not provided

Page 5 - OPINION AND ORDER

copies of the relevant papers, and have not specified which portions of the reports Wheeler co-authored. Plaintiffs provide only Wheeler's statement that he "co-wrote the articles outlining the results of the studies completed by Defendant Montgomery and Fenestra, including those parts that were identified as being written by Melonie Montgomery." Decl. of Dr. David Wheeler in Supp. of Pls.' Am. Mot. for Sum. J. and Sum. Adjudication ("Wheeler Decl.") at ¶ 10. This statement is insufficient to show what contributions Wheeler made to the clinical studies, and what control, if any, he exercised over the end product. In addition, there is no evidence that Wheeler and Montgomery intended to be co-authors. In fact, the opposite conclusion must be reached after reviewing the agreements between the two of them. In each of the agreements, Fenestra and Montgomery agree to "complete a comprehensive report of all findings with publishable research data included." Id., Ex. 1 at 1, Ex. 2 at 1, Ex. 3 at 1. In sum, I deny plaintiffs' motion for summary judgment declaring Wheeler a co-owner of the articles and papers written about the clinical studies, and decline to declare no copyright infringement on this basis at this time.

      Plaintiffs argue, alternatively, that the court could declare that they have not infringed on any copyright because defendants gave plaintiffs permission to use the reports. I agree. Defendants gave plaintiffs a non-exclusive license to use the reports, and, as a result, they have lost the right to sue for copyright infringement. See Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 559 (9th Cir. 1990). Montgomery signed an agreement authorizing Wheeler to

> reproduce in any format–in print, audio and on the internet–any of the articles and reports I have provided him in the past, currently and in the future (over the next five years). This right extends to reprint in books as well. I further stipulate that I have reviewed all the articles and reports provided to David Wheeler and have approved of those already in print as hard copy or [on] his website.

Wheeler Decl., Ex. 5 at 1. In return, Wheeler agreed to pay Montgomery 5% of profits from the sales of his book Water Empowerment for Life. This "Letter of Agreement" between Montgomery and Wheeler demonstrates that Montgomery gave Wheeler permission to use any articles she had written and, as a result, plaintiffs cannot be liable for copyright infringement so long as plaintiffs complied with the scope of the license.

Finally, plaintiffs ask for a declaratory judgment that they do not owe any additional funds to defendants. Wheeler paid $53,495.76 in fees to Fenestra for the studies conducted on his product. Wheeler claims he owes nothing more to defendants. Wheeler testified that he "paid to Fenestra . . . the full amount . . .owed." Wheeler Decl. at ¶ 9. Defendants, having failed to respond to the motion for summary judgment, have not raised any genuine issues of material fact in response to Wheeler's statement. Accordingly, I grant plaintiffs' request and declare that plaintiffs do not owe any additional funds to defendants.

In summary, plaintiffs are entitled to a declaratory judgment that they have not infringed on any copyright owned by defendants, so long as plaintiffs have not exceeded the scope of the license given to them. However, material issues of fact remain as to whether plaintiffs are co-owners of the articles and papers written about the clinical studies. In addition, I declare that plaintiffs owe no additional funds to defendants.

II.     Third Claim for Relief

In their third claim for relief, plaintiffs claim defendants have misappropriated trade secrets, in violation of ORS 646.463 and 646.465.

Under the Oregon Uniform Trade Secrets Act (OUTSA), a trade secret is information that:

(a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

Page 7 - OPINION AND ORDER

>  (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

ORS 646.461(4).

To establish a claim under OUTSA, plaintiffs must "demonstrate that (1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff[s] employed reasonable measures to maintain the secrecy of [their] trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation." Acrymed v. Convatec, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004).

For purposes of plaintiffs' claim, the relevant statutory acts of misappropriation are:

>  (d) Disclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was:
>
>  . . .
>
>  (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

ORS 646.461(2).

Plaintiffs assert that Wheeler's product, "M Water," is a trade secret, along with the related studies. Wheeler testified in his declaration, "I maintain the technology I use to make M Water as a trade secret. I keep the technology confidential, and expect any person to whom I disclose it to maintain its confidentiality." Wheeler Decl. at ¶ 15. In addition, Wheeler testified,

>  While I have released some reports of the clinical studies to the public, I have maintained the confidentiality of the underlying technology and treat it as a trade secret. I have maintained the confidentiality of the studies that identify optimum hydration for water technology and treat it as a trade secret. The information could be used to reverse engineer a technology that will produce water that has greater hydrating effects and associated health benefits.

Id. at ¶ 16. In sum, the technology, and the studies on the technology appear to qualify as trade secrets.

Plaintiffs attempted to maintain the secrecy of the technology by having Montgomery sign a non-disclosure agreement. Montgomery herself recognized the importance of treating the technology as a secret. In a commentary on the results of the studies she had conducted for Wheeler, Montgomery stated,

> Based on the fact that I maintain the strictest of confidentiality about all test results, whether in vitro or from clinical studies, I leave it up to clients such as Dr. Wheeler to share whatever information is deemed appropriate. Furthermore, I have a non disclosure agreement with Dr. Wheeler as I do with most clients, which makes the issue of disclosing test information totally in the hands of my client. I consider [Optimum Hydration Profile for Water] to be intellectual property owned by Dr. David Wheeler.

Wheeler Decl., Ex. 7 at 1. Accordingly, Montgomery's statements show not only that plaintiffs attempted to maintain the confidentiality of the technology and studies, but also that Montgomery acquired the knowledge in a context that required her to keep it secret.

Lastly, plaintiffs must show that defendants misappropriated the trade secrets. Plaintiffs ask the court to infer that defendants disclosed the trade secrets to Glacia Nova when Montgomery told the company that the M Water technology did not work as Wheeler had suggested, and when she offered "to provide consulting services to create Glacia Nova's own manufacturing protocol that would produce a superior product at a fraction of the cost." Decl. of Sungwook Joon Choe in Supp. of Pls.' Am. Mot. for Sum. J. and Sum. Adjudication ("Choe Decl.") at ¶ 5. Plaintiffs contend that the court could imply defendants "used the study results to market water technology to Glacia Nova." Pls.' Memo. in Supp. of Sum. J. at 6. I decline to do so. Plaintiffs offer no evidence demonstrating that defendants disclosed the technology underlying M Water, or the Optimum Hydration Profile for Water, to Glacia Nova. Choe did not testify that defendants sent him the studies or discussed the technology with him.

Page 9 - OPINION AND ORDER

Since genuine issues of material fact remain as to whether defendants disclosed any trade secrets, I must deny plaintiffs' motion for summary judgment on this claim.

III.   Fifth Claim for Relief

Plaintiffs allege in their fifth claim for relief that defendants committed unlawful trade practices, in violation of ORS 646.608.

Oregon's Unlawful Trade Practices Act provides, in relevant part:

> A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:
> . . .
> (b)   Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.
> . . .
> (h)   Disparages the real estate, goods, services, property or business of a customer or another by false or misleading representations of fact.

ORS 646.608(1). A "representation" is defined to be "any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." ORS 646.608(2). "Real estate, goods or services" means, in relevant part, "those which are or may be obtained primarily for personal, family or household purposes." ORS 646.605(6).

In addition,

> [A]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of willful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide the equitable relief the court considers necessary or proper.

ORS 646.638(1).

Page 10 - OPINION AND ORDER

The Act is inapplicable to the situation at hand, a commercial transaction, and cannot form a basis for plaintiffs' recovery. Investigators, Inc. v. Harvey, 53 Or. App. 586, 590, 633 P.2d 6 (1981) ("The Act applies only to consumer transactions; it does not regulate commercial transactions."); Lund v. Arbonne Intern., Inc., 132 Or. App. 87, 94 n.7, 887 P.2d 817 (1994) ("The legislative history shows that the intent of the amendment was to protect the unwary consumer."); CollegeNet, Inc. v. Embark. Com, Inc., 230 F. Supp. 2d 1167, 1174 (D. Or. 2001) ("the UTPA provides a cause of action only for consumers").

Plaintiffs' motion for summary judgment on this claim is denied, and the claim is dismissed on the court's own motion.

IV.     Defendants' Counterclaims

Plaintiffs seek dismissal of defendants' counterclaims, which are as follows: attorneys' fees on trade secrets claim and unfair trade practices act claim, two different claims for breach of contract, breach of implied covenant of good faith and fair dealing, and injunctive relief.

The first and second counterclaims are for attorney fees on plaintiffs' OUTSA and Unfair Trade Practices Act claims. Defendants have not responded to the motion, and are proceeding *pro se*. Accordingly, I grant plaintiffs' motion and dismiss the counterclaims.

Defendants' third, fourth and fifth counterclaims arise out of defendants' allegation that Wheeler altered Montgomery's articles and reports without her permission before distributing them to third parties. Defendants have not responded to the motion, have not disputed plaintiffs' concise statement of material facts that Wheeler has made no changes to the articles and reports since placing them on his websites, and has not disputed that Montgomery signed an agreement saying she had reviewed "all the articles and reports provided to David Wheeler and have

approved of those already in print or as hard copy or [on] his website." Wheeler Decl., Ex. 5 at 1. Accordingly, I grant plaintiffs' motion and dismiss the third, fourth and fifth counterclaims.

In their sixth counterclaim, defendants allege that "[i]n or about March, 2005 defendant Ahlgren and plaintiff Wheeler entered into a contract, pursuant to which defendant Ahlgren agreed that his company, Fenestra Research, would conduct an in vitro study for plaintiff Wheeler, and plaintiff Wheeler agreed to pay defendant Ahlgren $32,000 for conducting the study. Defendant Ahlgren has performed all conditions on his part to be performed under the contract." Answer and Counterclaims, ¶ 65. "Plaintiff Wheeler breached the terms of the contract by refusing to pay the amount due." Id. at ¶ 66. "As a result of plaintiff Wheeler's breach of the contract, defendant Ahlgren has been damaged in the sum of $26,700.00." Id. at ¶ 67. Based on my evaluation of this issue above, and on the fact that defendants have failed to respond, I grant plaintiffs' request and dismiss this counterclaim.

## CONCLUSION

Based on the foregoing, plaintiff's Motion for Summary Judgment (#41) is granted in part and denied in part. Plaintiffs are entitled to partial judgment on their first claim, and defendants' counterclaims are dismissed. Plaintiffs are not entitled to judgment on their third claim at this time, and the court dismisses plaintiffs' fifth claim.

The court will schedule a telephone conference to discuss a schedule to resolve the remaining claims.

IT IS SO ORDERED.

Dated this ____21st____ day of March, 2007.

                                           /s/ Garr M. King
                                           Garr M. King
                                           United States District Judge